IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SKANSKA USA BUILDING, INC. | * | |
| | * | |
| | * | |
| v. | * | Civil No. JFM-16-0933 |
| | * | |
| | * | |
| J.D. LONG MASONRY, INC. | * | |
| | * | |
| | ******** | |

**MEMORANDUM**

Plaintiff Skanska USA Building Inc. ("Skanska") brings this lawsuit against defendant J.D. Long Masonry, Inc. ("Long"), seeking money damages for sums incurred and/or to be incurred by Skanska in connection with Long's alleged breach of a subcontracting agreement between the parties. Skanska asserts that Long has materially breached the parties' subcontract by failing to indemnify Skanska and pay the costs of remediation work required after several rows of brick façade fell from the face of the building on which Long had been hired to do masonry work. Now pending is Long's motion for summary judgment on issues of the statute of limitations and release/accord and satisfaction. (ECF No. 21). The motions are fully briefed and no oral argument is necessary. *See* Local R. 105.6. For the reasons set forth below, Long's motion for summary judgment is denied.

**BACKGROUND**

This dispute arises out of a subcontract agreement (the "Subcontract") entered into by Skanska and Long on October 12, 2004. Skanska was hired by the National Institute of Health (NIH) as the construction manager on a project to build a new bio-medical research facility (the "Project") on the Bayview Campus at Johns Hopkins University in Baltimore, Maryland. (ECF

1

No. 1 ¶ 7). In October of 2004, Skanska retained Long to perform masonry work on the Project, and the parties executed an extensive subcontract (the "Subcontract") outlining their rights and obligations. (*Id.* ¶ 9–10). The Subcontract provided, generally, that Long would assume all responsibility and liability for injury or damage resulting from or related to the masonry work performed and that Long would indemnify Skanska for losses or expenses incurred in connection with its performance. (*Id.* ¶ 12(C)–(D), Ex. A, Art. 23.1, 30.1). Additionally, the Subcontract holds Long responsible for necessary repairs or replacement of any materials at its own expense in the event that defective work is discovered within one year of the final acceptance of the Project by the architects and owner. (*Id.* Ex. A, Art. 21.1). On October 12, 2007, Skanska notified Long that it had received a certificate of substantial completion dated October 4, 2007, and that "service warranties/guarantees are to begin on this date." (ECF No. 21, Ex. 2).

While the Project received its certificate of completion, NIH had apparently noted, both over the course of construction of the Project and after it was finished, a number of structural issues with the building, including some related to the masonry work performed by Long. (*See* ECF No. 25 ¶ 5). While Skanska and NIH were attempting to resolve NIH's concerns and come to an agreement on final payment for Skanska and its subcontrators, Long filed a lawsuit against Skanska in the Circuit Court for the City of Baltimore, Maryland, seeking additional payments under the Subcontract. (*Id.* ¶ 9). In 2009, NIH engaged engineering firm Wiss, Janey, Elstner Associates, Inc. ("WJE") to perform a visual condition assessment of various parts of the Project's outer façade, document any issues that may constitute a potential hazard to pedestrians or vehicular traffic below the affected areas, and prepare an investigative report. (*See id*. ¶ 5–6). WJE prepared a "Draft Report" on October 30, 2009, which documented visible evidence of exterior façade issues such as cracking, spalling, and planar displacement. (*Id.*).

Additionally, in 2010, the Office of General Counsel for Health and Human Services and NIH retained Exponent, Inc. to conduct an engineering assessment of the cause of distress to the building. (*Id*. ¶ 7). Exponent concluded that "total and differential settlement is ongoing and is expected to occur in the future, and may occur in areas that previously did not exhibit signs of distress." (*Id*. ¶ 5; *see also* ECF No. 21, Ex. 5).

Both the 2009 WJE Report and the 2010 Exponent Report apparently served as the basis for ongoing mediation efforts between NIH and Skanska that had resulted from significant disagreements regarding the amounts due to Skanska on the Project and the necessary repair and remediation of issues NIH and WJE had identified. (*See* ECF No. 25 ¶ 8; *see also* ECF No. 21, ¶ 5). Skanska and NIH eventually entered into a settlement agreement which created a list of Known Facility Issues or a "warranty list" detailing various items the parties agreed would be repaired or remediated by Skanska and its subcontractors. (*See* ECF No. 25 ¶ 8; *see also* ECF No. 21, Ex. 8). The portion of the "warranty list" pertaining to the masonry work on the Project was submitted to Long, and Long performed all of the listed repairs in 2010. (*See* ECF No. 21 ¶ 10, Ex. 8; *see also* ECF No. 25 ¶ 8). On August 3, 2011, Skanska and Long entered into a Settlement Agreement and Release (the "Release"), seeking to "resolve all issues between them on the Project . . . with no admission of liability by any party." (ECF No. 1, Ex. B, p. 5).[1]

On April 9, 2013, approximately 20 rows of brick façade fell from an outer wall on the eighth story of the Project onto a grassy area bordering the building (the "Incident"). (*See id*. ¶ 13). Skanska promptly contacted Long by letter on April 19, 2013, notifying Long of the

---

[1] The Release also states that it "shall not be construed to modify, amend, or otherwise alter the terms of the Subcontract entered into between J.D. Long and Skanska . . . ." (ECF No 1, Ex. B, § 6.2). Furthermore, the Release provides that "J.D. Long expressly agrees that it shall remain liable for . . . J.D. Long's continuing warranty or indemnity obligations, if any, as set forth in the Subcontract . . . and [l]atent defects not yet identified as of the date of this Agreement for which J.D. Long would otherwise be responsible under contract law." (*Id*.).

Incident and informing Long of its obligation to indemnify and hold Skanska harmless for all related claims and damages. (*See id.*, Ex. C).

WJE was again hired to investigate the Incident and assess the cause of the damage. (*See id.* ¶ 19). On April 24, 2013, Skanska informed Long of its opportunity to participate in the WJE investigation should it so choose. (*See id.*, Ex. D). WJE issued a report on July 31, 2013, outlining its conclusions regarding the causes of the Incident and making certain recommendations for remediation and repair work to the building's structure and façade. (*See id.*, Ex. E). The 2013 WJE report lists a number of alleged deficiencies related to Long's masonry work, including lack of horizontal soft joints, improper spacing and location of lateral veneer anchors, and inadequate bearing for the clay brick veneer on the shelf-angles. (*See id.*, Ex. E, p. 6; *see also* ECF No. 21, p. 7). WJE also made a number of recommendations for repairing the damage, which included the removal and reinstallation of the brick façade above and below each floor-line shelf-angle and potentially the replacement of the brick veneer in its entirety. (*See* ECF No. 1, ¶ 24, Ex. E, p. 8).

Skanska instituted temporary stabilization methods and provided a copy of the WJE report to Long. (*Id.* ¶ 24–25). In mid-April 2014, Skanska sent Long a letter demanding Long take responsibility for the Incident and perform the suggested repairs or, alternatively, provide Skanska with evidence that Long was not at fault for the Incident. (*See id.* ¶ 26, Ex. F). Long did not provide Skanska with information that was responsive to the WJE report. (*See id.* ¶ 27; *see also* ECF No. 8 ¶ 25). On May 2, 2014, Skanska sent Long another letter declaring Long in default under the Subcontract for failure to take responsibility for the Incident and perform repairs. (*See* ECF. No. 1 ¶ 27, Ex. G).

In April of 2015, WJE provided a comprehensive remediation plan to Skanska and NIH, and Skanska informed Long of its intention to coordinate with NIH regarding the remediation work on the façade. (*See id*. ¶ 28–29, Ex. H). According to Skanska, the repair work will cost an estimated $3.5 million. (*See id*. ¶ 30). Skanska filed a complaint in this court on March 29, 2016, asserting one count of breach of contract against Long. On September 22, 2016, defendant Long filed a motion for summary judgment on issues of the statute of limitations and release/accord and satisfaction pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 21).

## STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When reviewing a motion for summary judgment, the court must take all facts and inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The party opposing summary judgment must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 586 (1986); *see also In re Apex Express* Corp., 190 F.3d 624, 633 (4th Cir.1999). The non-movant "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970). A court should enter summary judgment when a party fails to make a showing sufficient to establish elements essential to a party's case, and on which the party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

## ANALYSIS

Defendant Long moves to dismiss Skanska's breach of contract claim on the bases that (1) Skanska's claim is barred by Maryland's statute of limitations for civil actions; and (2) Skanska's claim against Long is barred by the release/accord and satisfaction agreement executed between the parties in 2011. Long's defenses are addressed in turn.

### I.   Statute of limitations

Defendant Long contends Skanska's breach of contract claim is time-barred by Maryland's statute of limitations for civil actions because Skanska had actual or implied knowledge of Long's alleged breach more than three years prior to the initiation of the present lawsuit. (ECF No. 21, p. 2). Specifically, Long asserts that the report WJE prepared in 2013 following the Incident identified deficiencies in the masonry façade that were substantially similar or identical to those identified by WJE in 2009. (*Id*. at p. 7). Because Skanska was aware of masonry façade problems and the potential hazard to pedestrian and vehicular traffic in

2009, Long argues, Skanska had actual or inquiry notice of Long's alleged breach and was required to file its claim within three years of WJE's 2009 report. (*Id*. at p. 18). According to Skanska, there exist genuine issues of material fact with respect to when the statute of limitations began to run under Maryland's discovery rule because the 2013 WJE report identified new issues with the masonry façade that differed in important ways from those revealed in 2009, and many of the defects were latent and undiscoverable prior to the Incident. (*See id.* at p. 14).[2]

Maryland's statute of limitations provides that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different

---

[2] Skanska also contends that because its breach of contract claim is based on Long's failure to indemnify Skanska according to the parties' Subcontract, its claim did not accrue until Long refused to indemnify Skanska after the Incident in 2013. (*See* ECF No. 25, p. 13). Skanska's reliance on limited Maryland case law language addressing the applicable statute of limitations in cases involving claims against liability insurers is misplaced. In *Jones v. Hyatt Ins. Agency, Inc.*, the court stated that "[an] insurer's contractual duty to indemnify an insured is ordinarily not breached until an injured tort claimant has obtained a determination of liability and damages in an underlying tort action, and the insurer refuses to pay." 741 A.2d 1099, 1103 (Md. 1999). *Jones* stands for the proposition that since "[an] insurer's promise is to indemnify or to pay what its insured is legally obligated to pay," *id.* at 1104, a liability insurer cannot breach its promise until it refuses to pay the claimant following a judgment in the underlying tort case. *Id*. Both *Jones* and the case it primarily relies on, *Washington Metro. Area Transit Auth. v. Queen*, 597 A.2d 423 (Md. 1991), involve actions by third party tort claimants against the alleged wrongdoers' liability insurer. In this specific circumstance, the court concluded, the statute of limitations will not run until the third party claimant has obtained a determination of liability for the damage and the insurer subsequently denies its obligation to indemnify the insured. *See Jones*, 741 A.2d at 1103. *Jones* did not, however, alter the statute of limitations principles generally applicable to breach of contract actions, *see id*. at 1103–04, and its facts are readily distinguishable from the instant case. Skanska's breach of contract claim against Long is principally based on Long's allegedly defective masonry work and Long's noncompliance with the remediation terms of the Subcontract, and Skanska is seeking to recover economic damages it expects to incur as costs of repair to the façade. (*See* ECF No. 1 ¶¶ 36–41). As Long points out, Skanska is not seeking damages related to injury of persons or property resulting from the Incident. (*See* ECF No. 29, p. 3). Accordingly, Skanska's claim is subject to the standard statute of limitations for breach of contract claims, and accrual will be evaluated according to Maryland's discovery rule.

period of time within which an action shall be commenced." MD. CODE ANN., CTS. & JUD. PROC. § 5-101 (West 2016). Recognizing that stringent application of the statute of limitations is in many cases inequitable, Maryland courts have held that civil claims will not always accrue at the time of the breach or injury, but instead will accrue when the plaintiff either knows or reasonably should have known the breach or injury occurred. *See Poffenberger v. Risser*, 290 Md. 631, 636 (1981). The so-called "discovery rule" in effect "tolls the accrual date of the action until such time as the potential plaintiff either discovers his or her injury, or should have discovered it through the exercise of due diligence." *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131 (2011); *see also Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 445 (2000) (stating that "limitations begin to run when a claimant gains knowledge sufficient to put her on inquiry. As of that date, she is charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation"). The discovery rule "applies generally in all civil actions." *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 334 (1994). The plaintiff will be charged with "inquiry notice" of "all facts which [] an investigation would in all probability have disclosed if it had been properly pursued" from the time that he or she gains "knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry" about a potential breach or injury. *Poffenberger*, 290 Md. at 681. The statute of limitations period is triggered when the plaintiff is charged with inquiry notice. *See id.* "If there is a genuine dispute of material fact as to when the plaintiff was on inquiry notice, summary judgment is inappropriate." *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449–50 (D. Md. 2010), *aff'd*, 495 F. App'x 350 (4th Cir. 2012); *see also Frederick Rd. Ltd.*, 360 Md. at 93–94 (stating that summary judgment was inappropriate where there was a genuine dispute of material fact regarding whether plaintiffs could be charged with notice of their cause

of action and exercised due diligence to protect their rights); *cf. O'Hara v. Kovens*, 305 Md. 280, 294–95 (1986) ("Whether or not the plaintiff's failure to discover his cause of action was due to failure on his part to use due diligence, or to the fact that defendant so concealed the wrong that plaintiff was unable to discover it by the exercise of due diligence, is ordinarily a question of fact for the jury."). The burden of demonstrating a viable statute of limitations defense is on the asserting party, and the plaintiff "is under no obligation to plead facts in a complaint to show the timeliness of her claims." *Evans v. Beneficial Fin. I, Inc.*, No. 14-1994, 2015 WL 535718, at *2 (D. Md. Feb. 9, 2015).

Long contends that Skanska should be charged with actual or inquiry notice of Long's alleged breach of the Subcontract because the WJE report commissioned by Skanska and NIH in 2009 made Skanska aware of the deficiencies in the masonry façade and of the potential for complete wall failure. (*See* ECF No. 21, p. 18) Certainly, both the 2009 and the 2013 WJE reports appear to identify some similar issues with the masonry work, including cracking and spalling of lipped brick. (*Compare id.* at p. 11, *and* Ex. 10, p. 6). The problems specified in the two reports, however, are not identical, and there is not an overwhelming amount of obvious overlap. (*Compare id*. at p. 10–12, *and* Ex. 10). As Skanska points out, there are issues raised in WJE's 2013 report that appear to be new and distinct from those raised in 2009. (*See id.*; *see also* ECF No. 25, p. 16). Furthermore, according to Skanska, the defects WJE identified in 2009 were "primarily related to the effect of water infiltration caused by perched water," (ECF No. 25, p. 15), and were not, in its assessment, the underlying cause of the eventual collapse of the masonry façade in 2013. (*See id.*). Lastly, Long performed the remediation work recommended by WJE in 2009 and, to Skanska's knowledge, adequately addressed all of the structural issues with the masonry façade. (*See id.* at p. 16).

While Long claims that the 2009 WJE Report identified all of the relevant problems with the masonry façade and put Skanska on notice that deterioration or collapse was possible, Skanska maintains that the causes of the Incident in 2013 were defects unknown and undiscoverable in 2009 or at any time prior to the collapse. At a minimum, there is a genuine dispute of material fact with respect to whether the 2009 WJE report put Skanska on actual or constructive notice of the defects that caused the collapse of the masonry façade in 2013, and the issue of notice is a question for a jury. Accordingly, I cannot, at the summary judgment stage, hold that Skanska's breach of contract claim is barred by the statute of limitations.

## II.     Release/Accord and Satisfaction

Long also asserts that Skanska's claim is barred by the Release executed between the parties in 2011. (*See* ECF No. 21, p. 20). According to Long, the Release was intended to permanently resolve any and all issues between the parties with limited enumerated exceptions, none of which apply Skanska's claim resulting from the Incident in 2013. (*See id*. at p. 21–22). Skanska contends that the Release expressly preserves Long's indemnity obligations under the Subcontract as well as Skanska's right to recover from Long for latent defects in the masonry work. (*See* ECF No. 25, p. 8 ¶ 12–13).

Under Maryland law, contracts are interpreted according to the "objective test," *see, e.g.*, *Benson v. Bd. of Ed. of Montgomery Cty.*, 373 A.2d 926, 932 (1977), which dictates that "[w]here the language of the contract is unambiguous, its plain meaning will be given effect," *Aetna Cas. & Sur. Co. v. Ins. Com'r*, 445 A.2d 14, 19 (Md. 1982). "A court construing an agreement under [the objective] test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Gen. Motors Acceptance Corp. v. Daniels*, 492 A.2d 1306, 1310 (1985). If the

language of a contract is ambiguous, the construction of the agreement becomes a question of fact. *See Martin Marietta Corp. v. Int'l Telecommunications Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992).

Maryland courts interpret settlement and release agreements according to "ordinary contract principles," and "the principal rule governing the interpretation of a release, as with other contracts, is to effect the intention of the parties." *Chicago Title Ins. Co. v. Lumbermen's Mut. Cas. Co.*, 707 A.2d 913, 917 (Md. App. 1998). Furthermore, as this court has explained, "there must be a clear showing that the parties understood that the tendered settlement would extinguish all claims." *Azimirad v. HSBC Mortg. Corp.*, No. CIV.A. DKC 10-2853, 2011 WL 1375970, at *7 (D. Md. Apr. 12, 2011).

In support of its contention that the Release bars Skanska's breach of contract claim, Long highlights the language stating the parties intended to "resolve all issues between them on the Project in accordance with the terms of this Settlement agreement with no admission of liability by any Party." (ECF No. 21, p. 21; Ex. 9, p. 5). This language, Long argues, is unambiguous and clearly demonstrates the parties meant for the Release to effectively terminate all existing and potential disputes between them. (*See* ECF No. 21, p. 20–21). Long admits, however, that the parties carved out a number of exceptions to the general disclaimer of ongoing liability. (*See id.*; Ex. 9 ¶¶ 6.1–6.2). First, the Release explicitly states "[t]his Settlement Agreement shall not be construed to modify, amend, or otherwise alter the terms of the Subcontract entered into between J.D. Long and Skanska . . . ." (*See* ECF No. 21, Ex. 9 ¶ 6.2). Furthermore, according to the terms of the Release, Long "expressly agrees" to remain liable for (1) "[o]bligations arising under this Settlement Agreement;" (2) "[its] continuing warranty or indemnity obligations, if any, as set forth in the Subcontract or applicable contracts or documents

at law;" and, critically, (3) "[l]atent defects not yet identified as of the date of this Agreement for which J.D. Long would otherwise be responsible under contract or law." (*Id*. at ¶¶ 6.2.1–6.2.3). Long maintains, however, that it had no continuing warranty or indemnity obligations at the time of the Incident, and that the defects identified by WJE in 2013 were not "latent." (*See* ECF No. 21, p. 22).

According to Skanska, Long is liable for the remediation costs resulting from the Incident in 2013 both under its original indemnity obligations in the Subcontract as well as under the terms of the Release, because the defects causing the façade collapse were in fact "latent defects not yet identified" at the date of settlement. (*See* ECF No. 25, p. 24). The Release, Skanska contends, was meant only to "resolve the existing payment dispute between the parties arising out of the lawsuit filed by J.D. Long," and was not intended to extinguish any and all liability for Long going forward. (*See id*. at p. 23). As the parties' interpretive dispute makes clear, the issue of liability depends in large part on the determination of the factual cause of the Incident.[3]

If, as Long argues, the façade collapse was caused by defects for which Skanska on notice at the time the parties signed the Release in 2011, Long would likely be absolved of liability for the remediation costs. If, however, the Incident was caused by defects that were latent and unidentifiable at the time the Release was negotiated, Long may be liable to Skanska. There appears, at the very least, to be a genuine dispute of material fact between the parties as to the underlying cause of the Incident in 2013. (*See id*. at p. 24). Accordingly, I cannot hold that Skanska's claim is barred by the Release as a matter of law, and the issue of cause is appropriately resolved by a jury.

---

[3] Long indicates that it has performed an independent investigation of the cause of the Incident and expressly denies responsibility for the façade collapse. (*See* ECF No. 8 ¶ 25). Long has not, however, provided Skanska or the court with the results of its investigation. (*See id.*).

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment on the issues of the statute of limitations and the release/accord and satisfaction is denied. A separate order follows.

| | |
|---|---|
| 1/13/2017 | /s/ |
| Date | J. Frederick Motz |
| | United States District Judge |