# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SKANSKA USA BUILDING, INC., | * |
| Plaintiff, | * |
| v. | * Civil Case No. SAG-16-933 |
| J.D. LONG MASONRY, INC., | * |
| Defendant. | * |

************

## MEMORANDUM OPINION

Plaintiff Skanska USA Building, Inc. ("Skanska") filed a one-count Complaint against Defendant J.D. Long Masonry, Inc. ("Long"), seeking money damages in connection with an alleged breach of a subcontract between the parties. ECF 1. The parties have filed competing Motions for Summary Judgment on the issue of liability. *See* ECF 71 (Skanska's Motion for Summary Judgment, with accompanying memorandum of law ("Skanska's Motion")); ECF 72 (Long's Renewed Motion for Summary Judgment, with accompanying memorandum of law (Long's Motion)); ECF 73 (Long's Opposition to Skanska's Motion); ECF 74 (Skanska's Opposition to Long's Motion); ECF 75 (Long's Reply); ECF 76 (Skanska's Reply). The issues have been fully briefed, and no hearing is necessary. *See* Local R. 105.6 (D. Md. 2018). For the reasons that follow, I will grant Skanska's Motion and deny Long's Motion.

### I.  FACTUAL BACKGROUND

The National Institutes of Health ("NIH") hired Skanska as the general contractor on a project to build a research facility in Baltimore, Maryland. ECF 26 ¶¶ 4-5. Skanska and Long entered into a subcontract in October, 2004 ("the Subcontract"). ECF 71-2. The Subcontract required Long to construct a masonry façade for the research facility, in exchange for monetary

payment. *Id.* Long was the sole masonry contractor working on the research facility. ECF 71-4 at 6. Relevant to the instant dispute, the Subcontract contained the following provisions:

## ARTICLE XXIII
## INDEMNITY AND INSURANCE

23.1 To the fullest extent permitted by law, the Subcontractor hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of the Subcontractor or otherwise, and to all property, caused by, resulting from, arising out of or occurring in connection with the execution of the Work; and if any claims for such damage or injury (including death resulting therefrom) be made or asserted, . . . the Subcontractor agrees to indemnify, defend, and save harmless Skanska . . . from and against any and all such claims, and further from and against any and all loss, cost expense, liability, damage or injury, including legal fees and disbursements, that Skanska, the Architect or Owner, their officers, agents, servants or employees may directly or indirectly sustain, suffer or incur as a result thereof.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ARTICLE XXX
## INDEMNIFICATION

30.1 To the fullest extent permitted by law, the Subcontractor shall indemnify, defend and hold Skanska, the Owner, the Owner's subsidiaries and associates, the Architect/Engineer and their respective agents and employees (the "Indemnitees") harmless from all claims, loss, costs and expenses (including attorney's fees and disbursements) whether arising before or after completion of the Subcontractor's Work, caused by, arising out of, resulting from, or occurring in connection with, the performance of the Work by the Subcontractor, its sub-subcontractors, their agents and employees, their presence on the premises or the breach of this Agreement whether or not caused in part by the active or passive negligence or other fault of the Indemnitees excepting only such claims, costs, expenses or liabilities caused by the sole negligence of the Indemnitees.

ECF 71-2 at 21, 24. Skanska received a certificate of substantial completion of the research facility on October 4, 2007, and notified Long on October 12, 2007 that "service warranties/guarantees are to begin on this date." ECF 71-9.

Although it issued the certificate of completion, NIH had notified Skanska of some structural concerns with the research facility, including concerns relating to the masonry work

2

Long had performed. ECF 26 ¶ 7. In 2009, NIH hired an engineering firm, Wiss, Janney, Elstner Associates, Inc. ("WJE"), to visually assess the masonry façade and prepare an investigative report. ECF 26 ¶ 8. WJE's resulting "Draft Report" ("the 2009 WJE Report") documented visible evidence of issues with the façade, including cracking, spalling of lipped brick, and improper installation of through-wall flashing. ECF 72-5. In 2010, NIH and the Office of General Counsel for Health and Human Services hired an engineering firm, Exponent, Inc., to conduct an assessment of the building structure. ECF 26 ¶ 11. In its report ("the 2010 Exponent Report"), Exponent opined that "[t]otal and differential settlement is ongoing and is expected to occur in the future . . . and may occur in areas that previously did not exhibit signs of distress."[1] ECF 21-6 at 32.

After receipt of the 2009 WJE Report and the 2010 Exponent Report, NIH and Skanska entered into a settlement agreement including a "warranty list" of items to be repaired by Skanska and its subcontractors, and Skanska provided the sections of the "warranty list" pertaining to masonry work to Long for repair. ECF 71-10; 72-3 at 43-44. Following those repairs, on August 3, 2011, Skanska and Long executed a "Settlement Agreement and Release" ("the Release") to resolve all existing issues between them. ECF 1-2. The Release specifically provides that it "shall not be construed to modify, amend, or otherwise alter the terms of the Subcontract . . ." and that

---

[1] Although summarized herein to provide a complete synopsis of the facts relating to these motions, and to provide context for understanding the parties' arguments, as discussed below, no witnesses have sworn to the contents of the 2009 WJE Report, the 2010 Exponent Report, or certain other documents referenced in this opinion, and no current or former employees of WJE or Exponent have been designated or retained as expert witnesses in this litigation. The contents of unsworn reports constitute inadmissible hearsay, and will not be considered as evidence with respect to the pending motions. *See Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment."); *Solis v. Prince George's County*, 153 F. Supp. 2d 793, 798-99 (D. Md. 2001) ("[U]nsworn expert reports, which may have been prepared in compliance with Rule 26(a)(2), will not be considered by the Court for purposes of summary judgment.").

"Long expressly agrees that it shall remain liable for . . . Long's continuing warranty or indemnity obligations, if any, as set forth in the Subcontract." *Id.* at § 6.2.

On April 9, 2013, "approximately twenty rows of brick facade spanning more than twenty feet fell from the eighth story" of the research facility ("the Incident"). ECF 71-4 ¶ 79. Ten days later, Skanska sent a letter notifying Long of the Incident and of Long's contractual obligation "to fully indemnify, defend, and hold Skanska harmless from and against any claim or damage that may arise out of or related to this matter." ECF 71-11. NIH again retained WJE as a consultant to investigate the Incident. *Id.*; ECF 71-13. By letter dated April 24, 2013, Skanska invited Long to participate in the WJE investigation. ECF 71-12. On July 31, 2013, WJE issued a report ("the 2013 WJE Report") alleging several deficiencies in Long's masonry work, including lack of horizontal soft joints, improper spacing, location, and depth-of-engagement of lateral veneer anchors, and inadequate bearing for the clay brick veneer on the shelf-angles. ECF 71-13. WJE recommended significant remediation and repair work, to include removal and reinstallation of the brick façade above and below each floor-line shelf-angle, and possible replacement of the brick veneer in its entirety. *Id.*

Skanska sent the 2013 WJE report to Long. ECF 71-14. In April, 2014, Skanska demanded that Long perform the repairs recommended by WJE, or provide Skanska with evidence suggesting that Long was not responsible for the Incident. *Id.* On May 2, 2014, Skanska declared Long in default under the Subcontract, as a result of Long's failure to take responsibility for the Incident and to perform repairs. ECF 1-7.

In April, 2015, Skanska again wrote to Long to advise of its intention to coordinate with NIH to perform the remediation work, and to invite Long to attend a meeting with NIH to discuss the remediation plan. ECF 1-8. On March 29, 2016, as the remediation work was ongoing,

Skanska filed its Complaint in this case, asserting, among other breaches, that Long had breached the indemnification provisions of the Subcontract. ECF 1.

In this litigation, Skanska relies upon the expert opinion of Scott Silvester, a principal at the engineering firm of Simpson Gumpertz & Heger Inc.[2] In his sworn declaration, ECF 71-17, Silvester described his investigation of the cause of the Incident, and set forth conclusions, to a reasonable degree of engineering certainty, regarding the causes of the collapse. ECF 71-17 ¶¶ 4-7 (with attached report). In relevant part, Silvester concluded that Long's masonry work "did not comply with contract requirements and failed to meet applicable industry standards." *Id.* ¶ 7(v).

In its Rule 26(a)(2) disclosures, Long identified three persons as potential "Hybrid/Fact Experts": an employee of WJE, Daniel Lemieux, an employee of Exponent, Dr. David W. Sykora, and one of its own employees, Camillo DiCamillo. ECF 71-19. Long has submitted no declarations or sworn testimony from any of those witnesses, to be considered in connection with the pending dispositive motions.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to

---

[2] Like Long, Skanska also attached unsworn expert opinions to its Motion, specifically the July, 2013 Report authored by WJE and a January, 2014 report from Urban Engineers, Inc. ECF 71-13, 71-15. Those unsworn expert reports are also inadmissible, and their contents will not be considered in connection with the motions for summary judgment, although the reports may be referenced in order to explain the parties' respective positions.

support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)). Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## III. ANALYSIS

### A. LONG'S MOTION FOR SUMMARY JUDGMENT/STATUTE OF LIMITATIONS

Long contends that it is entitled to summary judgment because Skanska's claims are barred by the statute of limitations. ECF 72. The parties propound opposing views as to the appropriate accrual for Maryland's three-year statute of limitations. Long contends that Maryland's "discovery rule" applies to this breach of contract action, and suggests that Skanska's limitations period began to run in 2009, when Skanska first learned of defects in Long's masonry work. ECF 72-1 at 3-5. Long relies on a footnote in a January 17, 2017 opinion in this case ("the 2017 footnote"), in which the United States District Judge addressing Long's earlier motion for summary judgment agreed with Long's view on accrual, stating, "accrual will be evaluated according to Maryland's discovery rule." ECF 30 at 7 n.2. Skanska now asks this Court to reconsider that 2017 interlocutory order, pursuant to Federal Rule of Civil Procedure 54. ECF 74. That Rule permits the Court, prior to issuance of a final order, to vacate an interlocutory decision in order to correct its analysis. Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). In Skanska's view, the 2017 footnote was erroneous, because indemnity claims do not accrue until the party seeking indemnification makes the payment for which it seeks indemnity. ECF 74 at 5-9.

Upon careful review, I concur that the 2017 footnote was erroneous as to its analysis of accrual, and must be revised. *See Silver v. Wells Fargo Bank, N.A.*, Civil Action No. MJG-16-382, 2017 WL 3621235, at *2 (D. Md. Aug. 23, 2017) ("The ultimate responsibility of the federal

7

courts, at all levels, is to reach the correct judgment under law.") (quoting *Asher & Simons, P.A. v. j2 Global Canada, Inc.*, 977 F. Supp. 2d 544, 546-47 (D. Md. 2013)) (internal quotations omitted). The 2017 footnote suggested that Skanska's argument rested "on limited Maryland case law language addressing the applicable statute of limitations in cases involving claims against liability insurers." ECF 30 at 7 n.2. In fact, Skanska had cited additional opinions outside of the insurance context, including *Chevron U.S.A., Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807 (D. Md. 2015). *See* ECF 25 at 13. *Chevron*, like this case, addressed a contractual claim for indemnification, and found, "Maryland's three-year statute of limitations also applies to indemnity claims, which begin to accrue 'at the time payment was made by the party seeking indemnification.'" 113 F. Supp. 3d at 821; *see also Sherwin-Williams Co. v. ARTRA Grp., Inc.*, 125 F. Supp. 2d 739, 757 (D. Md. 2001) ("With regard to the date that a claim for contract indemnification accrues, Maryland applies the rule that the claim accrues at the time payment was made by the party seeking indemnification.") (citing *Southern Maryland Oil Co. v. Texas Co.*, 203 F. Supp. 449, 452-453 (D. Md. 1962)). The 2017 footnote did not address the Maryland precedent considering claims, like this one, for contract indemnification, and instead only distinguished the instant case from insurance liability claims. However, it is clear from the cases cited above that Maryland law does not distinguish between insurance liability claims and other contract indemnification claims, when imposing accrual at the time payment is made. Similarly, Long's attempt to distinguish between "breach of contract" and "indemnity" claims, ECF 73 at 2-3, is futile. This case presents a breach of contract claim, but the contractual provision in question is one for indemnity, making it a quintessential contract indemnity claim like that presented in *Chevron*.

In addition, the rationale for Maryland's policy that contract indemnity claims accrue at the time of payment is sound. Before a plaintiff incurs the expense for which it seeks indemnification, its damages are highly, if not wholly, speculative. *Cf. Thelen v. Massachusetts Mut. Life Ins. Co.*, 111 F. Supp. 2d 688, 693 (D. Md. 2000) ("Maryland law, of course recognizes that a claim must be ripe in order to be justiciable. Ripeness is the requirement that a claim be definite and matured, not contingent or speculative."). Practical impediments would hinder use of the discovery rule in the indemnification context as well. For example, in the instant case, application of the discovery rule would have imposed upon Skanska, who does not own or possess the right to make decisions about the research facility, obligations to conduct an intrusive investigation that Skanska would have no right to authorize. Skanska could not force NIH to remove all or part of the research facility's façade, simply to conduct an investigation to preserve Skanska's potential indemnification claim against its subcontractor. In fact, the testimony suggests that the NIH decisionmaker did not want to subject the building to an intrusive investigation that would disrupt the façade. *See* ECF 72-3 at 39 (testimony of Skanska representative describing NIH decisionmaker as stating, "I don't want to do brick in there because you will tear out six bricks to fix one, and it will be ugly for years."). The discovery rule is intended to disincentivize a party from failing "to investigate when the propriety of the investigation is naturally suggested by circumstances known to him," *Poffenberger v. Risser*, 290 Md. 631, 637-38 (1981) (quoting *Feritta v. Bay Shore Dev. Corp.*, 252 Md. 393, 402, 250 A.2d 69, 75 (1969)), not to impose an impossible condition on a party entitled to indemnification under a valid contract. Thus, Maryland's rule providing that claims of contract indemnity accrue at the time of the loss or expense to the claiming party is both well-established and grounded in common sense.

This Court must ensure that the appropriate law is applied, and it is permitted by Fed. R. Civ. P. 54(b) to vacate the earlier decision and correct the analysis. Accordingly, this Court vacates ECF 30 to the extent it suggests that the discovery rule governs accrual of Skanska's claim, and instead holds that Skanska's contract indemnification claim accrued at the time the claimed expenses were incurred. Under that method of determining accrual, Skanska's claim was timely, because Skanska filed suit on March 29, 2016, even before the three-year anniversary of the Incident itself. *See* ECF 1.

It is worth noting that, even had the discovery rule been applied, Long's motion for summary judgment would have been denied.[3] Without adducing any expert testimony to support its position, Long asked this Court to conclude that proper investigation of the deficiencies first noted in 2009 would have revealed the eventual causes of the Incident years later. ECF 21-1 at 15; ECF 72-1 at 6-15. The precedent Long cites in support of its position does not establish what degree of investigation would constitute "due diligence" or "circumstances which ought to have put a person of ordinary prudence on inquiry. . . with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued" in the case of a general contractor assessing these particular masonry issues with a brick façade. *Poffenberger v. Risser*, 290 Md. 631, 637 (1981) (internal citations omitted). Expert testimony would have been needed to establish the appropriate scope of the investigation in this context, and Long simply has not proffered any. Moreover, despite Long's assertions, the current factual record is no clearer on what an investigation would have revealed in 2009 than the record was when Long's earlier motion for summary judgment was denied in 2017. Long's argument relies heavily on the contents of the

---

[3] Additionally, with trial just weeks away, and with no experts having been retained, it appears unlikely that Long would have been able to present any additional evidence to sustain its burden on its statute of limitations defense at trial.

2009 WJE Report, along with a set of drawings (and associated comments) WJE prepared in 2010. ECF 72-1 at 5, 7-9, 12; ECF 21-4; ECF 72-2. As noted above, those documents are unsworn, and the contents are therefore hearsay that cannot constitute evidentiary support for a summary judgment motion. *See Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991); *Solis v. Prince George's County*, 153 F. Supp. 2d 793, 798-99 (D. Md. 2001). Long also cites the testimony of two Skanska representatives, Joseph Kifus and Larry Swiger, to establish that Skanska did not hire its own engineer or conduct its own intrusive investigation of the masonry façade. ECF 72-1 at 9. Again, though, Long proffers no expert testimony to establish that a general contractor of ordinary prudence would have taken those steps, in light of the information known to Skanska at the time, and in light of the fact that Skanska did not own or control the research facility.

Long alleges that Silvester, Skanska's expert, "has acknowledged that a prudent investigation to determine the cause of the masonry conditions observed in 2009 would have included" removing portions of the brick to examine the conditions behind it. ECF 72-1 at 13 (citing ECF 72-7 at 62). The question posed to Silvester, however, asked whether he would, as a structural engineer who came upon a building with clay masonry veneer construction with "out of plumb and vertical cracking," have "an initial impression based on your experience and training as to what would be a likely cause of that?" ECF 72-7 at 61. Silvester's response was that he would not "jump to judgments" without "some prudent level of investigation," and then he defined "prudent level of investigation" to include "removing portions of brick to examine the construction of that brick and the hidden conditions behind it and their configurations." ECF 72-7 at 62. Silvester's testimony thus establishes the type of investigation a structural engineer would do before opining as to the underlying cause of the visible damage, but not the type of investigation

11

a general contractor would be on inquiry notice to investigate under the circumstances presented in this case.

Finally, but significantly, the record indicates that the research facility is approximately an eleven-story 500,000 square foot building. ECF 72-6 at 1; ECF 71-2 at 61. None of the witnesses providing evidence or testimony with respect to these motions were present during the 2009 WJE investigation, and none could describe the exact steps WJE took to conduct its investigation, or the exact areas of the building WJE inspected. ECF 72-3 at 18; ECF 72-7 at 79; ECF 71-3 at 36. No witness has connected any of the observations made by WJE in its 2009 report with the particular section of the building façade that eventually fell in 2013. There is no evidence, then, that even an investigation in 2009, involving removal of some portions of the brick façade, would have revealed the conditions that led to the 2013 collapse, and no evidence that those same conditions existed throughout the entire façade, including the portions that remained intact after the Incident. Thus, absent the types of expert testimony described herein, Long simply could not make a showing that Skanska's claim would have been barred by the discovery rule, even had the discovery rule applied. Long's motion for summary judgment, accordingly, is denied.

### B. SKANSKA'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY

In its motion, Skanska seeks judgment in its favor on liability. ECF 71. In considering this motion, all facts must be viewed and all inferences must be drawn in the light most favorable to Long. *Matsushita*, 475 U.S. at 587-88. In addition to its argument regarding the statute of limitations, addressed above, Long relied on two arguments in opposition to summary judgment: first, Long argues that the Subcontract's two indemnification clauses do not cover the expenses Skanska incurred with respect to the Incident, ECF 73 at 2-5; second, Long contends that it has

established a genuine issue of material fact relating to the cause of the Incident, ECF 73 at 5-7. Both contentions lack merit.

First, the two indemnification clauses in the Subcontract, Articles 23.1 and 30.1, contain broad language, requiring indemnification not just for claims or liability, but for loss, cost, and expenses, including legal fees and disbursements. ECF 71-2 at 21, 24. Thus, the plain language of the indemnification clauses permits Skanska to recover indemnification for any losses, expenses, and costs it incurs (typically first-party claims), in addition to reimbursement for claims and liabilities (typically arising in a third-party context). The inclusion of each of those terms is significant in determining the parties' intent with respect to first-party claims. *Towson Univ. v. Conte*, 384 Md. 68, 81 (2004) ("[C]ourts do not interpret contracts in a manner that would render provisions superfluous or as having no effect.") (citing *Walker v. Dep't of Human Res.*, 379 Md. 407, 421 (2004)).

To support its interpretation of the contract suggesting that indemnification is only appropriate for third-party claims, Long relies on three cases addressing attorneys' fee claims in indemnity cases. ECF 73 at 4 (citing *Hearn Insulation & Improvement Co. v. Bonilla*, Civil Action No. 09-cv-00990-AW, 2011 WL 220091 (D. Md. Jan. 21, 2011); *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 438 (2008); *Thomas v. Capital Med. Mgmt. Assocs., LLC*, 189 Md. App. 439 (2009)). In those cases, the courts determined whether the language of indemnity provisions permitted recovery of attorneys' fees. *See Nova*, 405 Md. at 445-58; *Thomas*, 189 Md. App. At 466-72; *Hearn*, 2011 WL 220091, at *1-2. The issue of Skanska's entitlement to attorneys' fees for its pursuit of this lawsuit is not presented by this motion, and none of the three cases Long cites suggests that the plaintiffs in those cases would be unable to enforce an indemnification clause for a first-person claim. It is clear, under Maryland law, that the plain

13

language of an indemnification clause in each case must be assessed to determine the scope of the permitted indemnification, and the availability of first-party attorneys' fees. *See Bainbridge St. Elmo Bethesda Apartments, LLC v. White Flint Express Realty Grp. Ltd.*, 454 Md. 475, 494 (2017) (determining that the plain language of the contractual indemnification provision entitled the Plaintiff to attorneys' fees); *see also Nova*, 405 Md. at 449 (noting that the existence of precedent does "not obviate the need to apply contract interpretation to determine the scope of the indemnification provision and whether the [attorneys' fee] clause covers first party enforcement rights."). Thus, the outcome of the other cases, discussing different contractual language in determining the viability of fee requests, is inapposite in assessing the scope of the indemnification clause in the Subcontract which, as discussed above, expressly contemplates recovery of Skanska's first-party losses, costs, and expenses "caused by, arising out of, resulting from, or occurring in connection with" Long's performance under the Subcontract. ECF 71-1 at 24.

As to Long's second argument pertaining to whether its work was the cause of the Incident, Skanska has presented admissible evidence from its expert, Silvester, who opines that the collective causes for the Incident all stem from Long's deficient performance under the Subcontract. ECF 71-17 ¶ 7. As described above, Long offers no admissible evidence to refute Silvester's expert testimony. Although Long attempts to rely on Dr. Sykora's unsworn report (the 2010 Exponent Report) to refute Silvester's testimony, it concedes that, "Long did not retain or specially employ Dr. Sykora to provide expert testimony in this case." ECF 73 at 6. Unsworn expert reports, like that from Dr. Sykora, cannot be considered on a motion for summary judgment. Moreover, even if Dr. Sykora's report could be considered, it does not evidence an alternative cause for the Incident, because it was written in 2010 and the Incident did not occur until 2013.

14

Long's efforts to draw conclusions about the Incident based on Dr. Sykora's 2010 report amount to mere speculation.

Had Dr. Sykora and/or Exponent been retained to provide expert testimony in this matter, they would be subject to Fed. R. Civ. P. 26(a)(2)(B), and Long would have had to provide:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Presumably in an effort to avoid those disclosure requirements it cannot meet, Long attempts to define Dr. Sykora as a "hybrid" witness who would not be subject to those disclosures, per Fed. R. Civ. P. 26(a)(2)(C). ECF 71-19. However, a party cannot convert a traditional expert into a hybrid fact/expert witness simply by failing to engage him to provide the expert testimony the party seeks. Dr. Sykora has no testimony to supply as a fact witness, because his only involvement with the research facility occurred in the context of having been hired to provide an expert opinion to NIH through his engineering report.

Essentially, then, Long has adduced no admissible testimony or evidence to counter Silvester's expert testimony, or to suggest any alternative causation for the Incident. Long, as the nonmoving party, "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

15

Rather, Long must produce some evidence (more than a "scintilla") "upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (quoting *Improvement Co. v. Munson*, 81 U.S. 442, 448 (1871)) (emphasis omitted). Long has not done so here, and in light of Skanska's uncontroverted evidence attributing the cause of the Incident to Long's deficient performance under the Subcontract, and the indemnification clauses requiring Long to reimburse Skanska for its losses, costs, and expenses relating to Long's workmanship, Skanska's motion for summary judgment on liability must be granted.

## IV. CONCLUSION

For the reasons set forth above, Skanska's Motion for Summary Judgment as to Liability, ECF 71, is GRANTED, and Long's Renewed Motion for Summary Judgment, ECF 72, is DENIED.

A separate Order, including dates for certain pretrial proceedings, is filed herewith.

Dated: July 24, 2019

/s/
Stephanie A. Gallagher
United States Magistrate Judge