# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SKANSKA USA BUILDING, INC.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Case No. SAG-16-933** |
| | * | |
| **J.D. LONG MASONRY, INC.,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

************

## MEMORANDUM OPINION

Plaintiff Skanska USA Building, Inc. ("Skanska") filed a one-count Complaint against Defendant J.D. Long Masonry, Inc. ("Long"), seeking money damages in connection with a breach of a subcontract between the parties. ECF 1. On July 24, 2019, this Court granted Skanska's Motion for Summary Judgment on the Issue of Liability, and denied Long's Cross-Motion for Summary Judgment. ECF 77. Skanska filed a second Motion for Summary Judgment on Compensatory Damages, Pre-Judgment Interest, and Attorneys' Fees (the "Motion") on August 16, 2019. ECF 81. Long timely filed its Response. ECF 82. The issues have been fully briefed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Skanska's Motion is granted in part, and denied in part.

## I.    FACTUAL BACKGROUND

The relevant facts are not in dispute. In 2004, the National Institutes of Health ("NIH") hired Skanska as the general contractor on a project to build a research facility in Baltimore, Maryland. ECF 77 at 1. Skanska and Long thereafter entered into a subcontract in October, 2004 ("the Long Subcontract"), under which Long agreed to construct a masonry façade for the research facility in exchange for monetary payment. *Id.* The Long Subcontract contained the following indemnification provisions:

## ARTICLE XXIII
## INDEMNITY AND INSURANCE

23.1 To the fullest extent permitted by law, the Subcontractor hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of the Subcontractor or otherwise, and to all property, caused by, resulting from, arising out of or occurring in connection with the execution of the Work; and if any claims for such damage or injury (including death resulting therefrom) be made or asserted, . . . the Subcontractor agrees to indemnify, defend, and save harmless Skanska . . . from and against any and all such claims, and further from and against any and all loss, cost expense, liability, damage or injury, including legal fees and disbursements, that Skanska, the Architect or Owner, their officers, agents, servants or employees may directly or indirectly sustain, suffer or incur as a result thereof.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ARTICLE XXX
## INDEMNIFICATION

30.1  To the fullest extent permitted by law, the Subcontractor shall indemnify, defend and hold Skanska, the Owner, the Owner's subsidiaries and associates, the Architect/Engineer and their respective agents and employees (the "Indemnitees") harmless from all claims, loss, costs and expenses (including attorney's fees and disbursements) whether arising before or after completion of the Subcontractor's Work, caused by, arising out of, resulting from, or occurring in connection with, the performance of the Work by the Subcontractor, its sub-subcontractors, their agents and employees, their presence on the premises or the breach of this Agreement whether or not caused in part by the active or passive negligence or other fault of the Indemnitees excepting only such claims, costs, expenses or liabilities caused by the sole negligence of the Indemnitees.

*Id.* at 2; *see also* ECF 71-2 at 21, 24.

Eventually, in April, 2013, part of the masonry façade Long constructed collapsed.  ECF 77 at 4-5.  The collapse occurred due to Long's failure to construct the façade according to the requirements of the Long Subcontract and relevant industry standards.  *Id.* at 5, 14-15.  Since the façade's collapse, Long has not taken any action to remediate the damage caused as a result of its breach of the Long Subcontract.  *Id.* at 4-5.

In 2017, Skanska and C.A. Lindman, Inc. ("Lindman") entered into a contract ("the Lindman Subcontract") for Lindman to remediate the damage Long's breach had caused. ECF 71-21 at 1. Lindman completed its work in June, 2018. ECF 81-6 at 1. The Lindman Subcontract's initial value was fixed at $797,354, but the contract allowed the parties to execute Change Orders should there be changes in the scope of work that Lindman needed to perform. ECF 71-21 at 1, 22. Pursuant to four Change Orders that Skanska and Lindman executed between August, 2017 and October, 2017, the Lindman Subcontract now obligates Skanska to pay Lindman $1,595,917.54 for the façade repairs. ECF 81-2 to -5.

To date, Skanska has made the following payments to Lindman under the Lindman Subcontract:

| Check Number | Payment Date | Payment Amount |
|---|---|---|
| 933965 | January 11, 2017 | $198,004.56 |
| 942685 | February 28, 2017 | $47,383.58 |
| 953285 | April 11, 2017 | $177,220.00 |
| 994213 | October 2, 2017 | $252,328.82 |
| 1007545 | November 22, 2017 | $162,141.48 |
| 1012977 | December 14, 2017 | $304,233.90 |
| **Total:** | | $1,141,312.34 |

ECF 81-8 at 1, 3-5, 7, 9. According to Joseph Kifus, Skanska's senior project manager, Skanska is withholding the balance owed to Lindman pending the result of Lindman's additional claims against Skanska. ECF 81-50, ¶¶ 2, 8-9.[1]

In addition to the amount to be paid to Lindman, Skanska has incurred $331,617.00 in "general conditions" and "general requirements" costs in administering the Lindman Subcontract.

---

[1] Skanska indicates that Lindman disputes the $1,595,917.54 value Skanska currently places on the Lindman Subcontract. ECF 81-1 at 11 & n.2. According to Skanska, Lindman believes that it is owed $1,797,354.00 under the contract, which Skanska disputes. *Id.* at 11; *see* ECF 81-6 at 1. However, Skanska has represented that it will not seek indemnity from Long for any money in excess of the $1,595,917.54 value listed in the Change Order dated October 30, 2017. ECF 81-1 at 11 n.2; *see* ECF 81-5 at 1.

ECF 81-9, ¶¶ 34-39 (Mr. Simiso Kabo Expert Report); *see also* ECF 81-7 (Skanska's accounting ledger). These costs include those related to investigating the façade collapse, those incurred in supervising Lindman's remediation efforts (e.g., employee salaries), and other miscellaneous costs. *See* ECF 81-9, ¶¶ 34-35; ECF 81-50, ¶¶ 11-16 (Kifus Affidavit).

Further, in the course of litigating this matter, Skanska incurred over $400,000.00 in legal fees. ECF 81-52, ¶¶ 28-29 (Affidavit of Bennett D. Greenberg of Seyfarth Shaw LLP ("Seyfarth"), counsel for Skanska); *see* ECF 81-49 (itemized legal bills). Given this Court's rules regarding attorneys' fee awards, *see* Loc. R. app. B, Skanska only seeks an award of $346,237.64. ECF 81-1 at 1, 24-25; *see* ECF 81-52, ¶¶ 28-30. Skanska also seeks to recuperate its expert fees incurred in litigation, ECF 81-1 at 9-11, a pre-judgment interest award on the total compensatory damages award calculated from January 12, 2017, *id.* at 7-9, and a post-judgment interest award, *id.* at 25.

## II.    LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Skanska, as the moving party, bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282,1286 (4th Cir. 1987)). If Skanska establishes that there is no evidence to support Long's case, the burden then shifts to Long to proffer specific facts to show a genuine issue exists for trial. *Id.* Long must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of Long's position will be insufficient; there must be evidence on which the factfinder could reasonably find for Long.

*Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. Long "must produce competent evidence on each element of his or her claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If Long fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010 (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## III. ANALYSIS

### A. SKANSKA'S COMPENSATORY DAMAGES CLAIMS

Skanska's requested compensatory damages award of $1,927,534.54 has two components. First, Skanska seeks the total value of the Lindman Subcontract, $1,595,917.54. ECF 81-1 at 9-12. Second, Skanska seeks $331,617.00 in "general conditions" or "general requirements" expenses that it argues it "would not have incurred . . . but for Long's breach." *Id.* at 13.

Because Skanska asserts a state law breach of contract claim, Maryland's choice of law rules apply. *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 593 (D. Md. 2018) (quoting *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011)). If a contract contains

a choice of law provision, Maryland courts generally respect the parties' chosen forum. *See Cunningham v. Feinberg*, 441 Md. 310, 327 (2015). Here, the Long Subcontract provides that Maryland law governs any dispute between Skanska and Long. ECF 71-2 at 100. Accordingly, Maryland law applies to Skanska's damages claims.

As relevant here, Article 30.1 of the Long Subcontract states that Long agrees to indemnify Skanska "from all claims, loss, costs and expenses" resulting from Long's breach of the Subcontract. ECF 71-2 at 24. Reading this provision according to its ordinary meaning, Long correctly does not dispute that Skanska's contractual liability to Lindman and its "general requirements" costs are each an "expense" that arose from Long's breach. *See Ocean Petroleum, Co. v. Yanek*, 416 Md. 74, 86 (2010) (noting that Maryland courts take an objective approach to contract interpretation, adhering to the contract language's "customary, ordinary, and accepted meaning") (quoting *Fister v. Allstate Life Ins. Co.*, 366 Md. 201, 210 (2001)).

Skanska has provided admissible evidence documenting its contractual liability to Lindman under the Lindman Subcontract. *See* ECF 81-2 to -5. That evidence shows that because of Long's deficient construction of the masonry façade, Skanska has incurred $1,595,917.54 in contractual liability for Lindman to make those repairs. ECF 81-5 at 1. Skanska supports this claim with expert testimony verifying, to a reasonable degree of accounting certainty, the accuracy of Skanska's records as to its contractual liability to Lindman. ECF 81-9, ¶¶ 29-33 (Kabo report).

Further, Skanska has brought forth admissible evidence demonstrating that, because of Long's breach, Skanska was required to expend $331,617.00 in costs related to supervising Lindman's performance that Skanska otherwise would not have incurred, had Long performed its contractual duties. ECF 81-50, ¶¶ 15-16; *see* ECF 81-7 (accounting ledgers); *see also* ECF 81-51 (affidavit certifying the authenticity of Skanska's accounting ledgers). Skanska also supports this

claim with expert testimony verifying the accuracy of Skanska's records of those "general requirements" costs, to a reasonable degree of accounting certainty.  ECF 81-9, ¶¶ 34-39.

Not only has Long failed to proffer specific facts to show that a genuine issue of material fact exists for trial, *see Casey*, 823 F. Supp. 2d at 348, Long concedes that it "lacks expert testimony" to do so, ECF 82 at 3.  Accordingly, no reasonable factfinder could find for Long on the issue of compensatory damages.  *See Casey*, 823 F. Supp. 2d at 348.  The evidence, together with the indemnification provisions in the contract, entitles Skanska to an award of compensatory damages in the amount of $1,927,534.54 as a matter of law.  Accordingly, summary judgment must be granted in favor of Skanska on its compensatory damages claim.

### B.    SKANSKA'S CLAIM FOR PRE-JUDGMENT INTEREST

Skanska also seeks pre-judgment interest on the $1,927,534.54 compensatory damages award, calculated from January 12, 2017.  ECF 81, ¶ 2.  Because this is a breach of contract claim arising under Maryland law, Maryland law governs the award of pre-judgment interest.  *See, e.g.*, *Sagent Tech., Inc. v. Micros Sys., Inc.*, 276 F. Supp. 2d 464, 469-70 (D. Md. 2003).  In breach of contract claims, pre-judgment interest awards are awarded "as a matter of right" where "the contract requires payment of a sum certain on a date certain." *Crystal v. W. & Callahan, Inc.*, 328 Md. 318, 343 (1992) (citing *Affiliated Distillers Brands Corp. v. R. W. L. Wine & Liquor Co.*, 213 Md. 509, 516 (1957)).  For this rule to apply, the contractual obligation to pay and the amount due must have "become certain, definite, and liquidated by a specific date prior to judgment." *Buxton v. Buxton*, 363 Md. 634, 656 (2001) (quoting *First Va. Bank v. Settles*, 322 Md. 555, 564 (1991)).  An unliquidated claim is one whose amount "has not been fixed by agreement or cannot be exactly determined by the application of rules of arithmetic or of law." *Baltimore County v. Balt. Cty. Fraternal Order of Police*, 220 Md. App. 596, 664 (2014) (quoting 3 SAMUEL WILLISTON &

RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 7:34 (4th ed. 2008)). Claims that Maryland courts typically award pre-judgment interest for as a matter of right involve "bills of exchange or promissory notes," "actions on bonds," and "cases where the money claimed has been actually used by the other party." *I. W. Berman Props. v. Porter Bros., Inc.*, 276 Md. 1, 16-17 (1975). Even if pre-judgment interest is not available as a matter of right in a breach of contract action, the trial court may award pre-judgment interest within its discretion. *Buxton*, 363 Md. at 657; *see Affiliated Distillers*, 213 Md. at 516. Maryland has set the relevant pre-judgment interest rate at six percent per annum. MD. CONST. art. III, § 57; *see Md. Nat'l Bank v. Cummins*, 322 Md. 570, 599-600 (1991).

       1.     *Skanska's Pre-Judgment Interest Claim on the Full Lindman Subcontract Value*

Skanska first argues that it is entitled to pre-judgment interest because, under Article 23.1 of the Long Subcontract, Skanska "could offset or claw back amounts payable to Long under the Subcontract, as soon as those costs were 'sustained,' 'suffered,' or 'incurred.'" ECF 81-1 at 15. Skanska further claims that January 12, 2017 – the date Skanska made its first payment to Lindman under the Lindman Subcontract – is the appropriate date from which to measure pre-judgment interest because "[i]t was at that time . . . that [all of] the remediation costs became liquidated, due, and owing from Long under [Article] 23.1 of the [Long] Subcontract." *Id.*

Long contends that Skanska's pre-judgment interest calculation date is "erroneous." ECF 82 at 4. Pointing to the Lindman Subcontract Change Orders, Long argues that Skanska did not incur the full sum Skanska claimed as compensatory damages by January 12, 2017. *Id.* Long proposes that, "to the extent Skanska is entitled to pre-judgment interest," it should be calculated check-by-check. *Id.* at 4-5. In other words, the Court should determine the interest on the amount

of each check, calculated from the date Skanska made each individual payment to Lindman.  *Id.*

at 4-5 (citing ECF 81-8 (Skanska's cancelled checks showing payment to Lindman)).

Even assuming that the Long Subcontract did not entitle Skanska to pre-judgment interest

as a matter of right, the facts of this case warrant a discretionary pre-judgment interest award.  Pre-

judgment interest is designed "to compensate the aggrieved party for the loss of the use of" the

certain amounts owed to it "and the loss of income from such funds."  *I. W. Berman*, 276 Md. at

24 (1975).  While it is not clear exactly when Long would have had to indemnify Skanska under

the Subcontract, Article 30.1 entitled Skanska to some sort of indemnification from remediation

costs in the event of Long's breach.  *See* ECF 71-2 at 24.  Skanska would not have had to pay

Lindman for its services but for Long's breach.  Skanska could have used the money that it paid

Lindman – a quantifiable amount – for other profitable endeavors, but instead used it to remediate

the damage Long's breach caused.  Because Long's breach caused Skanska to lose those funds,

Skanska is entitled to "the loss of income from such funds."  *Id.*

However, Skanska is not entitled to pre-judgment interest on the full value of the Lindman

Subcontract.  First, as the Change Orders from August and October, 2017, demonstrate, Skanska

did not incur many of its costs payable to Lindman until Skanska and Lindman executed each

Change Order.  *See* ECF 81-2 to -5.  Indeed, the initial value of the Lindman Subcontract was only

$797,354.00.  *See* ECF 71-21 at 1.  As such, it cannot be said that the entire amount of Skanska's

compensatory damages (over $1.9 million) was "certain, definite, and liquidated" as of January

12, 2017, the date on which Skanska made its first payment under the Lindman Subcontract.

*Buxton*, 363 Md. at 634.

Second, as Long points out, Skanska has yet to make all of the necessary payments on its

$1,595,917.54 contractual obligation to Lindman. According to the cancelled checks Skanska

submitted in support of its motion, Skanska has only made $1,141,312.34 in payments to date. *See* ECF 81-8 (cancelled check exhibits). Further, Skanska is currently withholding "the balance of the Lindman Subcontract" from Lindman pending the resolution of issues regarding the final amounts owed to Lindman under the Lindman Subcontract. ECF 81-1 at 11 n.2; *see* ECF 81-6. Thus, the full Lindman Subcontract value was not "fixed," or even "actually used," by Skanska as of January, 2017. *See I.W. Berman*, 276 Md. at 16-17. Indeed, awarding Skanska pre-judgment interest on amounts it has not yet paid to Lindman would only be a windfall to Skanska, because there is no "use of income" loss to compensate. *See id.* at 24.

Because there is no genuine issue of material fact regarding the value of the Lindman Subcontract, I find that, under the facts of this case, Skanska is entitled to a pre-judgment interest award on the amounts it has paid to Lindman under the Lindman Subcontract. The interest on each payment made to Lindman shall be calculated individually at six percent *per annum*, beginning on the date on which Skanska made the payment, up until, and including, the date of judgment. The Order accompanying this Memorandum Opinion sets forth a schedule providing the specific *per diem* interest rate for each payment.

B. *Skanska's Entitlement to Pre-Judgment Interest for its General Requirements Expenses*

Skanska also seeks a pre-judgment interest award for its "general requirements" expenses. *See* ECF 81-1 at 15. Those expenses include the salaries Skanska paid to its project manager, project director, superintendent in charge of repairs, and administrative employees, in addition to travel and accommodation costs, temporary trailers, office supplies, and "minor miscellaneous costs." *Id.* at 13. Skanska argues that "costs and expenses paid by Skanska to correct defective Work became liquidated and due immediately after those costs were incurred." *Id.* at 15.

Skanska's argument is unpersuasive. First, "general requirements" costs are not described in the Long Subcontract. Looking at the contract, there is no fixed, certain date – other than the date judgment is entered – upon which Skanska's claim to overhead costs would become liquidated. *See* ECF 71-2 at 21, 24. Maryland does recognize pre-judgment interest as a matter of right in some cases where the amounts claimed have "been actually used by the other party." *I. W. Berman*, 276 Md. at 17. However, this exception "applies only when a *fixed amount* has been used." *East Park Ltd. P'ship v. Larkin*, 167 Md. App. 599, 626-27 (2006) (emphasis added) (finding pre-judgment interest not available as a matter of right for monies owed to partners withdrawing from a partnership because the partnership valuation was not fixed until judgment); *see Charles Cty. Broad. Co. v. Meares*, 270 Md. 321, 332 (1973) (awarding pre-judgment interest when one party used a $40,000 deposit paid pursuant to contract for their own corporate purposes). Here, Skanska's supervisory costs were at no point fixed and immediately payable under Article 30.1 (or Article 23.1) of the Long Subcontract, at any time prior to judgment. *See* ECF 71-2 at 21, 24. Further, while Article 23.1 would have allowed Skanska to withhold payments to Long if a third party sued Skanska, that right alone does not plainly establish a certain date by which Long had to indemnify Skanska for "general requirements" costs in a suit between Skanska and Long. *See id.* at 21. Rather, Skanska's "general requirements" costs will not become "fixed" until the instant judgment is entered.

Second, these overhead costs are not the type of "liquidated" costs typically entitling a party to pre-judgment interest. *See, e.g.*, *Balt. Cty. Fraternal Order of Police*, 220 Md. App. at 664 (the difference between what Baltimore County was charging retirees for insurance premiums and what it should have been charging); *Affiliated Distillers*, 213 Md. at 512, 519-20 (amounts unpaid to creditor based on agreement, plus payments creditor made on debtor's behalf). In

analyzing Skanska's accounting ledgers, much of the overhead expenses Skanska claims are employee salaries that Skanska would have had to pay regardless of Long's breach. *See* ECF 81-9 at 24. Skanska suffered no obvious loss of income use by paying employee salaries and other miscellaneous costs for the Lindman project, as opposed to some other project. *See I. W. Berman*, 276 Md. at 24; *see also First Va. Bank*, 322 Md. at 564 (explaining that courts award pre-judgment interest where the debtor's failure to pay "deprive[d] the creditor of the use of a fixed amount as of a known date") (quoting *Sloane, Inc. v. House & Assocs.*, 311 Md. 35, 53-54 (1987)).

Thus, though no genuine issue of material fact exists as to the amount of "general requirements" costs Skanska incurred, Skanska is not entitled to recover pre-judgment interest on those costs as a matter of right. Further, this Court declines to exercise its discretion to award pre-judgment interest on such costs for the reasons stated above. Accordingly, Skanska's motion is denied as to this particular claim.

## C.    SKANSKA'S CLAIMS FOR EXPERT WITNESS FEES

Skanska also seeks an award of $271,733.10, for the costs it incurred in employing experts in connection with Long's breach of the Long Subcontract. ECF 81-1 at 16-18. Those costs include $241,115.60 to Simpson Gumpertz & Heger ("SGH") for its expert investigation of the masonry façade collapse, and $30,617.50 to FTI Consulting, Inc. ("FTI") for its expert analysis of Skanska's accounting of its damages in this matter. *Id.* Long, again, acknowledges that it "lacks expert testimony" to contest these expert fees calculations. ECF 82 at 3.

Long does not dispute that, under Article 30.1 of the Subcontract, the fees Skanska paid to SGH and FTI are "expenses" arising out of Long's breach of the Subcontract. *See* ECF 71-2 at 24; *see also supra* Part III.A. The evidence demonstrates that, throughout 2013 and into 2017, SGH investigated the masonry façade collapse, visited the construction site, reviewed documents

related to the collapse, observed ongoing repairs, and compiled a report opining as to the collapse's cause. *See* ECF 71-17, ¶¶ 3-6; *see also id.* at pp. 4-22 (expert report). Recently, Skanska engaged SGH to assist Skanska in preparing requests for admissions to Long, preparing and attending depositions, and otherwise preparing for trial. *See* ECF 81-47. The evidence also shows that these expenses, taken together, total $241,115.60. *See id.*; ECF 81-7 at 10-12 (Skanska's accounting ledgers); ECF 81-46 (cancelled checks showing payment to SGH); *see also* ECF 81-9, ¶¶ 26-28 (Mr. Kabo's expert report verifying Skanska's accounting of these costs to a reasonable degree of accounting certainty). Finally, Skanska has produced evidence indicating that it currently owes $30,617.50 to FTI for Mr. Kabo's expert opinion verifying Skanska's accounting of its damages in this matter. *See* ECF 41-48.

Accordingly, even viewing the facts in the light most favorable to Long, Long has not produced any evidence to show that a genuine issue of material fact exists for trial, and no reasonable factfinder could disagree with Skanska's accounting of its expert fees incurred in this matter. *See Casey*, 823 F. Supp. 2d at 348. The evidence before the Court, together with the indemnification provisions in the contract, entitles Skanska to an award of $271,733.10 for the costs it incurred to SGH and FTI.

### D. SKANSKA'S CLAIM FOR FIRST-PARTY ATTORNEYS' FEES

Next, Skanska seeks reimbursement for $346,237.64 in legal fees incurred in its litigation against Long. ECF 81-1 at 25. Skanska first argues that this Court's Memorandum Opinion on the issue of liability from July 24, 2019, "ruled that the Subcontract authorizes Skanska to recover first party attorneys' fees that it incurred to pursue recovery against Long." *Id.* at 18 (citing ECF 77 at 13-14). Second, Skanska argues that the language appearing in Article 23.1 of the Long Subcontract "expressly authorizes recovery" of such first-party legal fees. *Id.* Long makes no

counterargument with regards to the availability of first-party attorneys' fees. *See* ECF 82 at 3. Long does, however, ask the Court to exercise its discretion to reduce Skanska's claimed attorneys' fees "for the fact that Skanska filed its lawsuit in advance of quantified damages and then delayed the proceedings for [two and a half] years until [Skanska] was actually prepared to move forward with its claim." *Id.*

As to Skanska's first argument, this Court's July 24 ruling on liability did not determine Skanska's right to recover first-party attorneys' fees. The discussion Skanska references came in the context of Long's argument that it was not liable to Skanska because the indemnification clauses in the Long Subcontract only covered third-party claims against Skanska. *See* ECF 77 at 13-14. This Court considered the cases Long cited, pertaining to the recovery of attorneys' fees incurred in third-party claims against the indemnitees, *see id.* at 13-14 (citing ECF 73 at 4 (Long's Response)), but specifically stated: "The issue of Skanska's entitlement to attorneys' fees for its pursuit of this lawsuit is not presented by this motion . . . ." *Id.* at 13. The ruling maintained "that the plain language of an indemnification clause in each case must be assessed to determine . . . the availability of first-party attorneys' fees." *Id.* at 13-14 (citations omitted). Skanska's instant Motion now properly presents this question.

Whether a contractual indemnification provision entitles the indemnitee to recover first-party attorneys' fees is a matter of contract interpretation that presents a question of law. *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 438, 448 (2008). Courts interpret contract provisions objectively, giving effect to the provision's "plain meaning," without regard to "what the parties may have subjectively intended by certain terms at the time of formation." *Id.* at 448; *see also Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 301 (2004) ("The terms of the contract must be interpreted in context, and given their ordinary and usual meaning."). The

Court must conduct an independent analysis of the Long Subcontract's indemnification provision to determine whether Skanska, the indemnitee, is entitled to recover first-party attorneys' fees. *See Nova Research,* 405 Md. at 449 (noting that the existence of precedent does "not obviate the need to apply contract interpretation to determine the scope of the indemnification provision and whether the [attorneys' fee] clause covers first party enforcement rights.").

Maryland follows the common law "American rule" with regards to attorneys' fees, which generally presumes that the parties in a breach of contract action will bear their own attorneys' fees. *Id.* at 445. Contractual clauses providing for attorneys' fees represent one of only a few limited exceptions to that rule. *Bainbridge St. Elmo Bethesda Apartments, LLC v. White Flint Express Realty Grp. Ltd.*, 454 Md. 475, 486 (2017). While such provisions are enforceable, Maryland courts are hesitant to read an attorneys' fees indemnification provision in a contract as applying both to first-party claims (those that the indemnitee brings against the indemnitor) and to third-party claims (those that third parties bring against the indemnitee). *See id.* at 486-88; *Nova Research*, 405 Md. at 450-53. When an indemnitee seeks indemnification for the attorneys' fees it incurs in a first-party claim, the Court must "strictly construe[]" the provision "to avoid inferring duties that the parties did not intend to create." *Bainbridge*, 454 Md. at 488 (quoting ROBERT J. ROSSI, ATTORNEYS' FEES § 9.18 (3d ed. 2002, Cum. Supp. 2007)). While Maryland does not "require explicit use of the phrase 'attorney's fees,'" the indemnification clause must contain express language plainly entitling the indemnitee to recover first-party attorneys' fees. *See Nova Research*, 405 Md. at 448, 451-52.

*1. Skanska's Entitlement to First-Party Attorneys' Fees*

Skanska argues that the plain language of Article 23.1 of the Long Subcontract entitles it to first-party attorneys' fees. Article 23.1 does contain express language for the recovery of all

costs, "including legal fees and disbursements." ECF 71-2 at 21. Further, Skanska incurred its attorneys' fees "as a result" of damage to the masonry façade that "occurr[ed] in connection with the execution of" the Long Subcontract. *Id.*

The context of these words within this provision, however, is important. *See Jones v. Hubbard*, 356 Md. 513, 534 (1999) ("[T]he interpretation of the [contract's] language is to be of the entire language of the agreement, not merely a portion thereof."). The provision states:

> [T]he Subcontractor hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature . . . to all persons . . . and to all property caused by, resulting from, arising out of or occurring in connection with the execution of the Work; and if any claims for such damage or injury *be made or asserted* . . . the Subcontractor agrees to indemnify, defend, and save harmless Skanska . . . . In the event that any such claims . . . arise, or are made, asserted or threatened *against Skanska* . . . Skanska shall have the right to withhold from any payments due or to become due to the Subcontractor an amount sufficient in Skanska's judgment to indemnify it . . . .

ECF 71-2 at 21 (emphasis added). Article 23.1 only indemnifies Skanska from third-party claims, not claims arising between Skanska and Long. First, the provision focuses on claims that could be "made or asserted" based on injury or damage to "all persons" and "all property." *Id.* The second sentence then provides a mechanism by which Skanska can indemnify itself if "any such claim[]" is brought "against Skanska." *Id.* Skanska's first-party attorneys' fees can conceivably fall under these terms under a broad reading of Article 23.1, but in strictly construing these words, their context demonstrates that the focus is on claims "made or asserted" against Skanska, not on claims *by* Skanska against Long. *See Bainbridge*, 454 Md. at 488.

Second, and ultimately fatal, is the fact that the provision lacks express terms indicating that it applies to first-party attorneys' fees. *See Thomas v. Capital Med. Mgmt. Assocs., LLC*, 189 Md. App. 439, 469-71 (2009) (finding that an indemnification clause providing for attorneys' fees "which may result against [the indemnitee] as a consequence of [the indemnitor's] performance of

this Agreement" only covered attorneys' fees the indemnitee incurred in defending against third-party claims, because the provision did not expressly provide for first-party attorneys' fees). *Compare with Atl. Contracting*, 380 Md. at 315-16 (awarding first-party attorneys' fees based on an indemnification clause for all costs sustained in connection with "the enforcement of this Agreement"). It would be inappropriate to give such an award without express language supporting it. *See Nova Research*, 405 Md. at 452 (cautioning against implied first-party attorneys' fees indemnification because the presumption of "disallowing recovery of attorney's fees would, in effect, be gutted").

Article 30.1, however, contains the required language justifying a first-party attorneys' fees award. That indemnification clause provides for Long to indemnify Skanska for costs and expenses "including attorney's fees and disbursements" arising from "the performance of the Work by the Subcontractor . . . *or* the breach of this Agreement." ECF 71-2 at 24 (emphasis added). The recent *Bainbridge* decision is highly persuasive. *Cf. Nova Research*, 405 Md. at 449 (noting the need to independently interpret contract provisions in each case, despite the existence of precedents).

In *Bainbridge*, the Maryland Court of Appeals considered an indemnification clause in a construction contract between Bainbridge and White Flint that indemnified White Flint from costs, including attorneys' fees, arising from "Bainbridge's breach of any terms of this Agreement." 454 Md. at 478, 480-81. The court held that the clause appropriately indemnified White Flint from its first-party attorneys' fees in litigation against Bainbridge because the language expressly tied payment of those fees "to an action for 'breach' of the contract." *Id.* at 489. The court further reasoned that the purpose of the construction contract's indemnification clause was "to ensure that Bainbridge, and not White Flint, carried all of the risk . . . otherwise, White Flint had no incentive

to support Bainbridge's plans." *Id.* at 493. Finally, the court drew support from its decision in *Atlantic Contracting*, which held that an indemnification clause providing for costs incurred in "the enforcement of [the] Agreement" expressly provided for first-party attorneys' fees. *Atl. Contracting*, 380 Md. at 302, 316-18; *see Bainbridge*, 454 Md. at 492-93. The *Bainbridge* court found that an "action for breach of contract" was "effectively the same" as one for "enforcement of the contract." 454 Md. at 492 (citing *Columbia Gas Transmission Corp. v. Ashleigh Heights LLC*, 261 F. Supp. 2d 332, 333 (D. Md. 2002)).

The same logic applies to Skanska's claim. Article 30.1 expressly provides for indemnification from attorneys' fees. *See* ECF 71-2 at 24. It then "ties payment of those fees expressly to an action for 'breach' of the [Agreement]." *Bainbridge*, 454 Md. at 489; *see* ECF 71-2. The language "breach of this Agreement" is identical to that in *Bainbridge*, and is "effectively the same" as that in *Atlantic Contracting*. *See Bainbridge*, 454 Md. at 480-81, 492. It expressly conveys the idea that Long would indemnify Skanska for costs, including attorneys' fees, incurred in a suit between Skanska and Long for breach. Articles 23.1 and 30.1 together support this reading, as it appears that Skanska and Long intended to create a scheme "to ensure that [Long], and not [Skanska], carried all of the risk" under the contract. *Bainbridge*, 454 Md. at 493. Without any argument from Long to the contrary, as a matter of law, Article 30.1 entitles Skanska to indemnification of the first-party attorneys' fees it incurred in this action.[2]

---

[2] In *Hearn Insulation & Improvement Co. v. Bonilla*, this Court refused to award first-party attorneys' fees based on a contractual indemnification provision containing nearly identical language as Article 30.1 of the Long Subcontract. *See* No. 09-cv-990-AW, 2011 WL 220091, at *1-2 (D. Md. Jan. 21, 2011). However, the Court there did not have the benefit of the *Bainbridge* decision, which was rendered six years after *Hearn Insulation*. Regardless, after a textual analysis of the Long Subcontract, the *Bainbridge* decision's reasoning is more persuasive under the facts of this case.

## 2. *The Reasonableness of Skanska's Claimed Attorneys' Fees*

Because an award of fees is warranted, the Court must determine the reasonableness of Skanska's claimed attorneys' fees. *See Atl. Contracting*, 380 Md. at 316 ("Where an award of attorneys' fees is called for by the contract in question, the trial court will examine the fee request for reasonableness, even in the absence of a contractual term specifying that the fees be reasonable.") (quoting *Rauch v. McCall*, 134 Md. App. 624, 638 (2000)). Such a determination is a factual one within this Court's discretion. *Id.* (quoting *Reisterstown Plaza Assocs. v. Gen. Nutrition Ctr., Inc.*, 89 Md. App. 232, 248 (1991)).

Skanska has provided the Court with extensive records of the hours each counsel of record has worked in this matter, *see* ECF 81-49, as well as an affidavit from Mr. Bennett Greenberg, the primary billing attorney responsible for Seyfarth's representation of Skanska, *see* ECF 81-52. Mr. Greenberg attests that the hourly rates charged by each attorney is "commensurate with those customarily charged by similar attorneys providing representation in similar matters." ECF 81-52, ¶¶ 10, 14, 18, 22, 27. However, Skanska is not requesting an award covering each attorney's full hourly rate. ECF 81-1 at 24-25. Skanska instead calculates its attorneys' hourly rates pursuant to this Court's published schedule, *see* Loc. R. 109(2)(b) & app. B, which prescribes an hourly rate lower than what each of Skanska's counsel would customarily charge, *see* ECF 81-1 at 24-25; ECF 81-52, ¶¶ 9, 13, 17, 21, 26. Thus, while Skanska's legal bills total $454,105.45, it only requests $346,237.64 from Long. *See* ECF 81-1 at 24-25; ECF 81-52, ¶¶ 28-29.

Long, again, does not challenge the reasonableness of the fees Skanska's counsel charged or the reasonableness of the hours Skanska's counsel worked. ECF 82 at 3 (noting that Long "lacks expert testimony" to contest these matters). Long does, however ask for Skanska's attorneys' fees award to be reduced "for the fact that Skanska filed its lawsuit in advance of

quantified damages and then delayed the proceedings for [two and a half years] until it was actually prepared to move forward with its claim." *Id.*

The "two and a half year" period refers to the time between Skanska's filing of its Complaint on March 29, 2016, and the time that the parties agreed to lift the stay in this case in October, 2018. *See* ECF 1; ECF 52. Long is correct that a sizeable delay occurred after Judge Motz issued the first summary judgment opinion in this case on January 17, 2017. *See* ECF 31. After that ruling, the only substantive activity that occurred until October, 2018 consisted of scheduling conferences, joint motions to modify scheduling orders, and Skanska's filing of status reports. *See* ECF 36, 39, 43, 46-47, 50. Reading the evidence in the light most favorable to Long, some, if not the majority, of this delay was attributable to Skanska's ongoing investigation of, and repair to, the defective masonry façade. *See, e.g.*, ECF 39, ¶¶ 7-8 (explaining the need for both the March, 2017 and April, 2017 scheduling order modifications was Skanska's ongoing investigation and repairs); ECF 47, ¶¶ 1, 5 (noting that, as of September, 2018, repairs to the façade were still ongoing).

However, this lengthy delay does not justify a reduction in Skanska's attorneys' fees award. Even reading the evidence in the light most favorable to Long and assuming that the delay was entirely Skanska's fault, the aforementioned proceedings – scheduling conferences, joint motions, status reports – did not unreasonably balloon Skanska's legal fees. Skanska did, of course, incur modest legal fees during the delay, but the Court cannot find any evidence that those fees were unreasonable in order to justify lowering Skanska's attorneys' fees award any further. *See* ECF 81-1 at 24-25.

In sum, the Court finds that the Long Subcontract entitles Skanska to indemnification from its first-party attorneys' fees. The Court further finds that Long has failed to proffer specific facts

to show that a genuine issue of material fact exists for trial, and that no reasonable factfinder could find against Skanska with regards to its attorneys' fees computation. *See Casey*, 823 F. Supp. 2d at 348. The rates that Skanska's counsel have billed are reasonable, and the hours that it worked on this case are also reasonable. Therefore, summary judgment must be granted in favor of Skanska.

### E. SKANSKA'S CLAIM FOR POST-JUDGMENT INTEREST

Finally, Skanska seeks post-judgment interest on the total judgment entered against Long. ECF 81-1 at 25. Despite this being a state law breach of contract claim under diversity jurisdiction, federal law governs the calculation of post-judgment interest. *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999). Federal law entitles prevailing litigants to a post-judgment interest award "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a) (2012). Accordingly, Skanska is entitled to a post-judgment interest award as a matter of law, and summary judgment must therefore be entered for Skanska on its post-judgment interest claim.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, ECF 81, is GRANTED IN PART and DENIED IN PART.

A separate Order is filed herewith.

Dated: September 9, 2019

_____/s/_____

Stephanie A. Gallagher
United States Magistrate Judge
